IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARY ANAYA and JOSUE ANAYA, individually and Next Friends of JOEL EZEKIEL ANAYA, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | 4:07CV3254 |
| v. | ) ) | |
| DON KLEINE, in his individual and official capacity as Douglas County Attorney, and NICOLE GOALEY, in her individual and official capacity as an Assistant Douglas County Attorney, | ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) | |

Because the plaintiffs have given up their claims for damages, because the plaintiffs have not shown that they face a threat of ongoing or future harm sufficient to justify the issuance of an injunction even if I assume the Constitution was violated, and because I have broad discretion to deny declaratory relief when considerations of practicality and wise judicial administration dictate such a result, I will grant the defendants' motions for summary judgment. Relatedly, I will also deny the plaintiffs' cross-motion for summary judgment.

## I.  Introduction

When responding to defendants' motion for summary judgment and asserting their own motion, the plaintiffs have substantially limited their lawsuit. In particular, the plaintiffs concede that "Kleine and Goaley [have] prosecutorial immunity that would bar any claim for damages against them." (Filing 58 at CM/ECF p. 14.) They now seek only injunctive and declaratory relief against the two remaining defendants,

Mr. Kleine, the Douglas County Attorney, and Ms. Goaley, his assistant.[1] The equitable relief they seek is also limited. Plaintiffs seek declaratory and injunctive relief barring these prosecutors (1) from proceeding in the future to enforce Nebraska's newborn screening program against the plaintiffs by *ex parte* practice and (2) from temporarily seizing custody of any children born to the plaintiffs in the future. (Filing 58 at CM/ECF p. 2.)

As a consequence of the foregoing, I will grant summary judgment to the defendants on all claims for monetary relief. With the damage claims resolved, I turn next to the plaintiffs' claims for injunctive and declaratory relief and explain why the plaintiffs are not entitled to the equitable relief they seek.

## II. Background

Taken from the parties' submissions and the files of this court,[2] the following constitute the material[3] undisputed facts:

1.     Mr. and Mrs. Anaya are sincere and deeply religious people who operate a ministry in Omaha, Nebraska. They have ten children and do not use birth-control. No one has ever claimed that Mr. and Mrs. Anaya have neglected their children save

---

[1]By stipulation, all claims asserted against defendants associated with the Nebraska Department of Health and Human Services have been dismissed and judgment has been entered accordingly. (Filings 55, 62 and 63.)

[2]*See* filing 50 at CM/ECF pp. 3-18 (brief), filing 58 at CM/ECF pp. 2-14 (brief), filing 64 at CM/ECF pp. 2-7 (brief) and filing 69 (brief). *See also* filing 51 (index of evidence), filing 52 (index of evidence), filing 57 (index of evidence), and filing 65 (index of evidence).

[3]The parties quibble about certain things but those matters are not material for purposes of summary judgment.

for their religiously motivated unwillingness to have their babies tested for certain metabolic diseases.

2.      Unlike most states, Nebraska requires newborns to be screened for inherited and metabolic diseases even when their parents object on religious grounds. Neb. Rev. Stat. §§ 71-519 to 71-524 (West 2008).  Without expressing approval of the State's policy of ignoring the religious sensibilities of parents, in a decision issued on September 12, 2006, I ruled that Nebraska's screening law does not violate the federal constitution.  *See Spiering v. Heineman*, 448 F. Supp.2d 1129 (D. Neb. 2006) (Nebraska's mandatory testing of newborn infants did not violate the rights of parents who believed that such testing violated a religious precept, inasmuch as testing was rationally related to legitimate government interest in safeguarding health of children, and fit existed between such an interest and Nebraska's program, in that, and among other things, the testing screened for diseases that experts agreed were appropriate for such screening).

3.      If a parent refuses to submit a child for testing, the relevant county attorney (or the Nebraska Attorney General) must take legal action when notified of a parent's refusal by the Nebraska Department of Health and Human Services.  Neb. Rev. Stat. § 71-524 (West 2008).[4]  The county attorney may proceed in at least two

_____

[4]In full, that statute provides:

In addition to any other remedies which may be available by law, a civil proceeding to enforce section 71-519 may be brought in the district court of the county where the infant is domiciled or found.  The attending physician, the hospital or other birthing facility, the Attorney General, or the county attorney of the county where the infant is domiciled or found may institute such proceedings as are necessary to enforce such section.  It shall be the duty of the Attorney General or the county attorney to whom the Department of Health and Human Services reports a violation to cause appropriate proceedings to be initiated

-3-

ways. The first way is to follow the specific procedure set forth in the testing statute. That is, the county attorney may file suit in the district court whereupon a hearing must be held within 72 hours and a decision by the district judge must be issued within 24 hours following the hearing. Alternatively, and consistent with the "other remedies" language of Neb. Rev. Stat. § 71-524, the county attorney may proceed to the juvenile court. *See* Neb. Rev. Stat. § 43-247(3)(a) (West 2008). A Nebraska juvenile court judge has the authority to authorize the taking of a child from a parent in an *ex parte* proceeding when the child is endangered, but such an order must be followed shortly thereafter by notice to the parents and hearing where the parents may be heard. *See*, *e.g.*, *In re Interest of Mainor T.*, 674 N.W.2d 442, 456-457 (Neb. 2004) (*ex parte* juvenile court order placing temporary custody with the Department of Health and Human Services of a child thought to be endangered is permitted because of its short duration and the requirement that the parents be promptly notified and provided a meaningful hearing).

4.       In the past, the Anayas refused to have their child, Rosa Anaya, tested. This resulted in litigation with Mr. Kleine's predecessor. In that case, and unlike this one, the Douglas County Attorney filed suit in the district court seeking relief. After notice to, and a hearing involving, the parents, the district court ordered that Rosa Anaya be tested. That decision was affirmed by the Nebraska Supreme Court in a decision issued on March 25, 2005. *Douglas County v. Anaya*, 694 N.W.2d 601 (Neb.), *cert. denied*, 546 U.S. 826 (2005) (*Anaya I*) (rational basis existed for statute, and thus it did not unlawfully burden parents' right to freely exercise their religion, nor did it unlawfully burden their parental rights). However, and despite the ruling of the Nebraska courts, Rosa Anaya was never tested. The record provides no

_____

without delay. A hearing on any action brought pursuant to this section shall be held within seventy-two hours of the filing of such action, and a decision shall be rendered by the court within twenty-four hours of the close of the hearing.

explanation for the failure to test the child.  That said, there is no claim that Mr. and Mrs. Anaya obstructed the testing of Rosa Anaya after the Nebraska courts ruled against them.

5.    Joel Anaya was born on September 2, 2007.   Mr. and Mrs. Anaya registered the birth as required by law.

6.    On September 18, 2007, Krystal Baumert, who worked for the State of Nebraska, sent a certified letter to the Anayas asking whether they planned to have their newborn child tested.  On that same day, Baumert called the Anaya family home. Baumert spoke with Mrs. Anaya.   Mrs. Anaya told Baumert that the Anayas did not plan on having the child tested.  Baumert asked Mrs. Anaya whether Mrs. Anaya understood "what happens next."  Mrs. Anaya, aware of how things were handled in the district court litigation regarding Rosa Anaya, answered "yes."

7.    As required by law, and in a letter dated September 18, 2007, Baumert notified the Douglas County Attorney of the unwillingness of Mr. and Mrs. Anaya to comply with the testing law.   Having heard no response, and on September 21, 2007, a lawyer for the State of Nebraska sent an e-mail asking the Douglas County Attorney's office who was handling the matter.   After receiving the e-mail, Kleine and Goaley consulted with each other and other lawyers in the office in an effort to decide what to do.  This period lasted from September 21, 2007 until October 10, 2007.

8.    On October 5, 2007, Julie Miller, the Program Manager for Nebraska's screening law, faxed an "Affidavit in Support of Temporary Custody" to the Douglas County Attorney.   There is no evidence that Kleine or Goaley prepared the affidavit for Miller.   In fact, because it was not standard practice for State of Nebraska employees to submit affidavits, Miller consulted a lawyer for the State of Nebraska to assist with the preparation of the document.  While Mr. and Mrs. Anaya argue that

affidavit failed to address the question of "exigency," and they are correct in that assertion, there is no claim or evidence that the affidavit was inaccurate, incomplete or stale regarding the information presented. In pertinent part, the affidavit is reproduced below:

> COMES NOW Affiant, *Julie Miller*, and first being duly sworn on oath states that she is the Program Manager for Newborn Screening Program of the Nebraska Department of Health and Human Services. The Nebraska Newborn Screening Program has no record that a newborn screen has been performed for Joel Ezekiel Anaya born on September 2, 2007. Written notification to the parents of this child informing them of the requirement to get this child screened was sent on 9/18/07. Krystal Baumert of the Nebraska Newborn Screening Program phoned the mother of this child Mary Anaya who indicated she would not have him screened. Ms. Baumert asked if Mrs. Anaya understood what would happen next relative to notifying the County Attorney, and Mrs. Anaya said "yes." Neb. Rev. Stat. §§ 71-519 to 71-524 require every baby born in Nebraska to be screened for certain metabolic and inherited disorders. The diseases included in the newborn screening panel cause a variety of problems from profound mental retardation to physical disability, seizures, blindness, deafness and/or death in infancy or childhood. The diseases individually are rare, however, Nebraska's detection rate found in 2006 approximately 1:624 newborns had one of the screened for diseases. The diseases usually cannot be detected, and prevention of the damaging effects usually cannot occur without the screen. The blood test is minimally invasive via a heel stick procedure to collect 5 drops of blood on a special filter paper blood collection device.

9.     On October 10, 2007, Goaley, with the approval of Kleine, filed a petition and an *ex parte* motion in the Douglas County Juvenile Court. The petition alleged that Mr. and Mrs. Anaya had failed to comply with the requirement that Joel Anaya be tested and, as a result, "said child is at risk for harm." The *ex parte* motion, styled "Motion for Temporary Custody," was supported by Miller's affidavit. Based

upon the petition and Miller's affidavit, the motion alleged that placement of the child in the custody of Health and Human Services was required and "is a matter of immediate and urgent necessity for the protection of said child[.]"  The motion went on to claim that the "current situation precludes reasonable efforts being made to prevent or eliminate the need for removal and to make it possible to remain at the parental/custodial home."

10.    That same day, and on October 10, 2007, Judge Christopher Kelly signed an order directing the Nebraska Department of Health and Human Services to take custody of the child and to place the child in temporary foster care.  Based upon Julie Miller's affidavit, the judge found that "said placement and detention is a matter of immediate and urgent necessity for the protection of said child[.]" The judge set a hearing for October 17, 2007.

11.    Joel Anaya was removed from the family home at about 10:00 A.M. on October 11, 2007.[5]

12.    On October 11, 2007, counsel for Mr. and Mrs. Anaya contacted the Douglas County Attorney's office.  The opposing lawyers agreed to contact a judge in an effort to expedite the hearing.  They called the court and another judge agreed to take the case and expedite the hearing.  Accordingly, a hearing was set for October 12, 2007, before Judge Elizabeth Crnkovich.

13.    On October 12, 2007, a "detention hearing" was conducted before Judge Crnkovich.  Present for that hearing were Ms. Goaley, Jefferson Downing, counsel for the Anayas, Maureen Monahan, guardian ad litem for the child and John Baker, counsel for the Nebraska Department of Health and Human Services.  Evidence was

---

[5]The parties joust about the circumstances of the removal, but those disputes are not material.

presented by Goaley.  Krystal Baumert testified about her dealings with the Anayas.
Richard Lutz, M.D. testified about the diseases screened for by Nebraska's testing
program.  The doctor stated that death and disability may result if a child has one of
the diseases and the disease is left untreated, but he fumbled with an answer to a
question about whether the need for testing was "urgent."  Although the child was
about six weeks old, Lutz testified that testing was still appropriate.  Mr. and Mrs.
Anaya were called to testify by their counsel and they were cross-examined.  On
rebuttal, Ms. Goaley called Vicki Maca to testify.  Maca, who worked for the
Nebraska Department of Health and Human Services, testified that she was unable
to identify any safety concerns regarding the child except for the fact that the baby
had not been tested.  The evidentiary part of the hearing then concluded.  Stating that
she could not imagine any greater "risk than death or disability," but acknowledging
that "one cannot know with any sureness whether this child is at risk for death or
disability in the absence of this test," Judge Crnkovich ordered that Joel Anaya would
remain in the custody of the Nebraska Department of Health and Human Services
until the testing was completed and the results indicated that the child did not have
any of the diseases.[6]

14.     On October 12, 2007, Joel Anaya was tested.  The negative results were
reported on October 15, 2007.  On October 16, 2007, the juvenile action was
dismissed on Goaley's motion and Joel Anaya was returned to his parents.  Mr. and
Mrs. Anaya appealed.

15.     In this case, Ms. Goaley testified in her deposition that if she was
presented with another similar case, she would review the facts and law and make an
independent determination about what course of action was appropriate.  She further
indicated that "if the law had not changed in any substantial fashion," and the facts

---

[6]It appears that Judge Crnkovich made the decision to keep the child in foster
care *after* the test, and before receipt of the results, on her own initiative.

remained the same, she would do the same thing.  In short, Ms. Goaley made it clear that she would follow the law.

16.    On December 5, 2008, the Nebraska Supreme Court issued its opinion in a case styled *In Re Interest of Joel Anaya*, 758 N.W.2d 10 (Neb. 2008) (*Anaya II.*) The court concluded that (a) the public interest exception to the mootness doctrine was applicable; (b) a rational basis supported Nebraska's newborn screening statutes; and (3) the failure of Mr. and Mrs. Anaya to comply with Nebraska's newborn screening statutes did not alone constitute neglect as would provide a basis for the juvenile court assuming jurisdiction over Joel Anaya.  In particular, the court stated that:

> While the State need not prove that the juvenile has actually suffered physical harm, our cases make clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm.  See, e.g., *In re Interest of Brianna B. & Shelby B.*, 9 Neb. App. 529, 614 N.W.2d 790 (2000) (holding that parent's alleged alcoholism was not sufficient evidence for adjudication under § 43-247(3)(a) when there was no evidence that such drinking caused harm or resulted in improper care of children).  Here, the State did not meet its burden of proof as required under § 43-247(3)(a).  Nothing presented at the October 12, 2007, hearing was tantamount to proof that the Anayas had neglected Joel.  On the contrary, the evidence at the October 12 hearing established that during a DHHS home visit, the staff observed that Joel's needs were being met and that he was a healthy 6-week-old baby.  Although failure to comply with the newborn screening statutes may be relevant, along with other facts, to a determination that a child was neglected as that term is understood under § 43-247(3)(a), the fact of failure to test under the newborn screening statutes, standing alone, does not establish neglect.

> Our review of the record convinces us that the State failed to establish that this was an emergency situation, that harm was imminent, or that continued detention of Joel was warranted.  At 5 weeks old, Joel

-9-

was well past the first 24- to 48-hour emergency time period set forth in the newborn screening statutes and regulations. The only evidence presented at the hearing with respect to the need for testing at 5 or 6 weeks of age was the testimony of Dr. Lutz to the effect that the testing was still relevant for a 6-week-old infant because some of the conditions can still be detected. The record suggests that testing can still identify beneficial information after the first week of life; however, this fact alone does not prove that without immediate testing, a 5-week-old infant is at immediate risk of harm warranting jurisdiction under § 43-247(3)(a) or that such an infant's continued detention after a blood specimen is obtained is necessary. There simply was no legal, factual, or logical basis to keep Joel in State custody after the blood sample was taken.

*Id.* at 21.

17.     After the foregoing declaration, the *Anaya II* court dismissed the appeal. It granted the Anayas no further relief. *Id.* (stating "because we have concluded that the instant appeal is moot and because the above-stated determinations are made based on the public interest exception to the mootness doctrine, we dismiss the present appeal.").

18.     I was unaware of the appeal in *Anaya II* until December 8, 2008 when my law clerk called the opinion to my attention. With respect, counsel should have advised me of the pendency of that matter. In any event, on December 8, 2008, I gave the parties until January 13, 2009 to submit briefs regarding *Anaya II*. In particular, I inquired whether "equitable relief [in this case] is necessary or proper given the decision in *Anaya II*."

### III.  Analysis

On this record, the plaintiffs have no right to equitable relief. Briefly, I next explain why injunctive and declaratory relief is unavailable to the plaintiffs.

First, it has long been the law in the Eighth Circuit that "in order to obtain injunctive relief, a plaintiff must show some substantial likelihood that past conduct alleged to be illegal will recur" and this means that a plaintiff seeking injunctive relief must affirmatively show that "such practices are likely to affect them in the future." *Sterling v. Calvin*, 874 F.2d 571, 572 (8th Cir. 1989) (in a civil rights action brought against municipal court judge to enjoin alleged practice of jailing black criminal defendants without affording them counsel, the Eighth Circuit affirmed a grant of summary judgment because the plaintiffs made no showing that past unlawful conduct was likely to recur).

Since *Anaya II* makes it plain that the failure to submit a child for testing is not alone sufficient to justify an *ex parte* custody order under Nebraska's juvenile law, since Ms. Goaley has affirmatively promised under oath to reexamine the law to look for changes in it before taking action in the future, and since there is no evidence that Kleine, Goaley or Nebraska juvenile court judges more generally are likely to "thumb their noses" at the Nebraska Supreme Court, summary judgment must be granted for Kleine and Goaley on the plaintiffs' claim for injunctive relief. Simply put, what happened with Joel Anaya cannot recur.

Counsel for the plaintiffs argues, in essence, that *Anaya II* could be parsed in a way that would still leave open a threat to another *ex parte* proceeding in juvenile court for the mere failure of Mr. and Mrs. Anaya to have a new baby tested. I reject that reading of *Anaya II* because it is far too strained. In contrast, an ordinary and good faith reading of *Anaya II* makes it plain that (1) Mr. and Mrs. Anaya do not "neglect" their children as that word is properly understood in Nebraska's juvenile law and (2) the failure to test their baby is not alone sufficient to take a child from Mr. and Mrs. Anaya in an *ex parte* proceeding commenced in juvenile court.

Second, with respect to declaratory relief, it would be imprudent and it is unnecessary to give the plaintiffs what they request. The Nebraska Supreme Court

-11-

has essentially given the Anayas the declaration they seek, albeit under Nebraska law. Practically speaking, nothing I could say would make any difference to future enforcement actions.   Since federal courts are not in the business of making unnecessary pronouncements, I decline to exercise my discretion to grant declaratory relief.  *See*, *e.g.*, Declaratory Judgment Act, 28 U.S.C. § 2201(a) (providing that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party . . . ."  (emphasis added); *Wilton v. Seven Falls*, 515 U.S. 277, 288 (1995) (holding that district judges have wide discretion under the Declaratory Judgment Act to stay or dismiss a federal action when there is a parallel state proceeding; stating: "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.   Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.   In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.") (footnote omitted).

IT IS ORDERED that the motion for summary judgment filed by Ms. Goaley and Mr. Kleine (filing 49) is granted.   The motion for summary judgment filed by Mr. and Mrs. Anaya (filing 56) is denied.   A separate judgment will be issued dismissing this case with prejudice.

Dated this 22nd day of January, 2009.

BY THE COURT:

*s/Richard G. Kopf*
United States District Judge